IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

BRETT C. KIMBERLIN

:

v.                            :   Civil Action No. DKC 24-2323

:

UNITED STATES DEPARTMENT OF
JUSTICE, et al.               :

**MEMORANDUM OPINION**

Brett C. Kimberlin ("Plaintiff") brought this action against three federal government agencies and five former federal government officials ("Defendants") challenging decisions made regarding his parole over twenty-five years ago.  Presently pending and ready for resolution in this constitutional tort case are the motion to dismiss filed by Defendants, (ECF No. 24), Plaintiff's two motions for an order to show cause, (ECF Nos. 15, 19), Plaintiff's motion for alternative service on former government officials, (ECF No. 16), Plaintiff's motion to seal, (ECF No. 31), Defendants' motion to strike, (ECF No. 35), and Plaintiff's motion for hearing on the motion to dismiss, (ECF No. 37).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be granted in part, the motions to show cause will be denied as moot, the motion for alternative service will be denied as moot, the motion to seal will be granted, the

motion to strike will be granted, and the motion for hearing will be denied.

I.    **Background**

    **A. Factual Background**

The history of this case reaches all the way back to 1978, when the acts for which Plaintiff Brett Kimberlin was later convicted took place.[1] (ECF No. 1 ¶ 2). According to Defendants' motion to dismiss, Carl and Sandra DeLong were seriously injured by one of the eight bombs Plaintiff planted around Speedway, Indiana in September 1978. (ECF No. 24-1, at 2-3). The DeLongs sued Plaintiff for compensation for their injuries, and a court ruled in favor of the DeLongs in 1983. (ECF No. 1 ¶ 2-3). Plaintiff was incarcerated following multiple convictions in 1980 and 1981, *Kimberlin v. Dewalt*, 12 F.Supp.2d 487, 489-490 (D.Md. 1998), and was released on parole in 1994. (ECF No. 1 ¶ 5). At the time of his release, Plaintiff had a book deal with Knopf Books following the "great deal of media and political interest in Plaintiff." (*Id.* ¶ 6). While on parole, he "worked on the book, a music project, and started a new business in international trade with Ukraine." (*Id.* ¶ 10). Mrs. DeLong, who still had an outstanding judgment against Plaintiff, began trying to secure the

---

[1] All facts are undisputed and taken from Plaintiff's complaint, unless otherwise noted.

money to satisfy the judgment, which Plaintiff alleged was "corrupt."[2] (*Id.* ¶ 4). In 1996, Plaintiff applied for a mortgage. He alleges he asked the mortgage company whether he had to list the then-fourteen-year-old judgment on his application, but the company advised him that he did not need to list it. (*Id.* ¶ 11).

Plaintiff alleges political maneuvering by many different government figures, none of whom are named defendants in this lawsuit, who were allegedly unhappy with Plaintiff's book deal. (*Id.* ¶¶ 12-13). As relevant to this litigation, Plaintiff alleges that his parole status was changed because of the political pressure, and that the Parole Commission subsequently decided to enforce the civil judgment against him. (*Id.* ¶¶ 14-16). Plaintiff alleges that Defendant Ramsburg, his parole officer at the time, dishonestly worked against him to gather information about his finances and force him to pay Mrs. DeLong for her judgment. (*Id.* ¶¶ 18-19, 21, 24). Believing that Plaintiff would be receiving a payment from his publishing company in early 1997, the Parole Commission set a deadline for Plaintiff to pay a portion of the judgment to Mrs. DeLong. (*Id.* ¶ 19). When the deadline came and

---

[2] Defendants point out that the Indiana civil judgment in favor of the DeLongs ultimately was affirmed by the Indiana Supreme Court in 1994. (ECF No. 24-1, at 3 (citing *Kimberlin v. DeLong*, 637 N.E.2d 121, 128 (Ind. 1994))). See also, *Kimberlin v. DeLong*, No. 24A-MI-1870, 2025 WL 2603049 (Ind.Ct.App., Sept. 9, 2025)(affirming denial of Rule 60 motion for relief from judgment.)

went without a payment, Defendant Ramsburg initiated parole revocation charges: one for failure to pay the book proceeds to satisfy the civil judgment, and one for not listing the civil judgment on his mortgage application. (*Id.* ¶ 21).

Around the same time, Plaintiff went through bankruptcy proceedings, where former Assistant U.S. Attorney Fine participated. (*Id.* ¶ 27). Ultimately, Plaintiff's parole was revoked, and he was incarcerated for several years. (*Id.* ¶ 40).[3]

_____

[3] The history of his convictions and parole proceedings were recounted:

> In 1979, Kimberlin was arrested after he tried to procure counterfeit government documents—including a presidential seal, military driver's license forms, and military license plates. Federal officers eventually connected him to eight bombings in Speedway, Indiana. He was later convicted of several felonies, including impersonating a federal official by wearing a uniform representing the Department of Defense. *See* 18 U.S.C. § 912. We affirmed Kimberlin's convictions and sentence on direct appeal, *see United States v. Kimberlin*, 781 F.2d 1247, 1248 (7th Cir. 1985); *United States v. Kimberlin*, 805 F.2d 210, 252 (7th Cir. 1986), and collateral review, *see United States v. Kimberlin*, 675 F.2d 866, 869 (7th Cir. 1982). Kimberlin was paroled in 1994, but his parole was revoked in 1997 for submitting a fraudulent mortgage loan application and for failure to pay a civil judgment to victims of the bombings. *See Kimberlin v. Dewalt*, 12 F. Supp. 2d 487, 490–94 (D. Md. 1998), *aff'd sub nom. Kimberlin v. Bidwell*, 166 F.3d 333 (4th

Plaintiff alleges that he was sexually assaulted by prison staff while incarcerated.  (*Id.* ¶ 42).

**B. Procedural Background**

On August 9, 2024, Plaintiff Brett Kimberlin filed a complaint for damages and a declaratory judgment against eight Defendants: the United States Department of Justice, United States Attorney's Office for the District of Maryland, and United States Parole Commission (together, the "Agency Defendants"), as well as former United States Attorney General Merrick Garland, former United States Attorneys for the District of Maryland Erek Barron and Lynne Battaglia, former Assistant United States Attorney Tamera Fine, and former parole officer Renata Ramsburg (together, the "Individual Defendants").  (ECF No. 1).  Plaintiff brings seven claims against the Defendants: Violation of First Amendment Rights (Count I), Violation of Due Process Rights (Count II), Violation of Cruel and Unusual Punishment (Count III), Conspiracy to Violate Constitutional Rights (Count IV), Failure to Act, Intervene, and Prevent, and Conspiracy to Coverup (Count V), Denial of Due Process

---

Cir. 1998).  He completed his prison sentence in 2001.

*Kimberlin v. United States*, No. 21-1691, 2022 WL 59399, at *1 (7th Cir. Jan. 6, 2022)(affirming denial of *coram nobis*.)

by the Continued Coverup of Official Misconduct (Count VI), and Sexual Assault and Abuse under Federal and State Law[4] (Count VII).

On January 17, 2025, Plaintiff filed a motion for order to show cause. (ECF No. 15). Plaintiff argues that the Defendants should be ordered to show cause why he is allegedly being treated differently "than other similarly situated Plaintiffs," referring to a December 17, 2024, settlement with individuals who had been sexually abused by prison staff while incarcerated at a women's prison in California. (*Id.* at 1; *see* ECF No. 15-1). On January 21, 2025, Plaintiff filed a motion for alternative service, requesting permission from the court to allow service via alternative means for Defendants Battaglia and Ramsburg, as they are no longer with their federal employers. (ECF No. 16). On January 27, 2025, Plaintiff filed a second motion to show cause, this time asking the court to require the government to address two recent Executive Orders. (ECF No. 19).

On February 6, 2025, Defendants filed a motion to dismiss and opposition to the motions for alternative service and to show cause. (ECF No. 24). Plaintiff filed his opposition to Defendants'

---

[4] Plaintiff does not allege that any of the Defendants sexually assaulted him. Rather, Plaintiff alleges that Defendants "intentionally revoked Plaintiff's parole on trumped up charges and conspired to have him transferred to an unsafe prison where they knew he would likely be subjected to sexual abuse and he was. This caused him severe psychological trauma and PTSD which is actionable under both federal and state law." (ECF No. 1, at 25).

motion on March 21, 2025, (ECF No. 28), followed by a motion to seal on March 31. (ECF No. 31). Defendants filed their reply to the opposition on April 7, 2025. (ECF No. 32). A few days later, on April 16, 2025, Plaintiff filed a sur-response and supplement to the motion for alternative service, (ECF No. 33), which Defendants moved to strike on May 7, 2025. (ECF No. 35). Following further briefing on the motion to strike, Plaintiff filed a motion for hearing on Defendants' motion to dismiss on July 21, 2025. (ECF No. 37).

## II. Analysis

The complaint asserts constitutional violations and tort claims against two groups of Plaintiffs, defined above as the Individual Defendants and the Agency Defendants. The Individual Defendants are former government officials, who can be sued in either their individual or official capacities (or both). The complaint requests money damages (both compensatory and punitive) along with a declaratory judgment on all counts.

Courts hold *pro se* pleadings to "less stringent standards than a formal pleading drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). The court has an obligation to construe pleadings of self-represented litigants liberally. *Id*. The court is not required, however, to "conjure up questions never squarely

presented to them," or to recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277-78 (4th Cir. 1985).

Defendants raise a number of arguments, beginning with insufficient service of process on Defendants Battaglia, Fine and Ramsburg, and proceeding to lack of subject matter jurisdiction due to sovereign immunity, and failure to state a claim under the Federal Tort Claims Act. Additional arguments are based on statute of limitations, collateral estoppel, *Heck v. Humphrey*, 512 U.S. 477 (1994), and qualified immunity. As will be explained, Plaintiff has indeed failed to serve some of the defendants properly, but he will not be required to correct that deficiency. His complaint fails to demonstrate subject matter jurisdiction over some of his claims, and he fails to state a claim for others. Accordingly, the entire complaint will be dismissed.

### A. Motion to Strike

It is necessary first to resolve Defendants' motion to strike, (ECF No. 35), to determine the proper body of information to consider on the merits of the dispositive motion to dismiss. *See Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 689 (D.Md. 2011). Defendants move to strike Plaintiff's "Sur-Response and Supplement," (ECF No. 33), which Plaintiff states supplements his earlier reply, (ECF No. 28), regarding Defendants' motion to

8

dismiss, his motions to show cause, and the motion for alternative service. (ECF No. 33 at 1).

As Defendants point out, Local Rule 105.2(a) states "[u]nless otherwise ordered by the [c]ourt, surreply memoranda are not permitted to be filed." (*See* ECF No. 35-1, at 2). Plaintiff did not request leave to file a surreply or a supplement. Even if Plaintiff had requested to file a surreply, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes*, No. 12-cv-3109-RWT, 2013 WL 3353752, *3 (D.Md. July 2, 2013) (citing *F.D.I.C. v. Cashion*, 720 F.3d 169, 176 (4th Cir. 2013)). Plaintiff's surreply and supplement do not respond to any new arguments. Rather, the surreply contains conclusory allegations in line with what is included in Plaintiff's complaint and opposition to the Defendants' motion to dismiss. Defendants' motion to strike will be granted.

### B.    Capacity of Individual Defendants

As a second threshold matter, this court must determine whether Plaintiff has sued the Individual Defendants in their individual or official capacities, or both. A suit against a government official in his or her official capacity is substantively the same as suing the agency for which the official works. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as

the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Here, Plaintiff has sued the agencies themselves and any claims against the Individual Defendants in their official capacity would be redundant.

The United States Court of Appeals for the Fourth Circuit previously described the standard for making this determination where the complaint is unclear:

> [W]hen a plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity. One factor indicating that suit has been filed in such a manner might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint. . . . Another indication that suit has been brought against a state actor personally may be a plaintiff's request for compensatory or punitive damages, since such relief is unavailable in official capacity suits. The nature of any defenses raised in response to the complaint is an additional relevant factor. [. . .] Throughout, the underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable can be ascertained fairly.

*Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995) (citation modified).

10

Considering these factors, it is apparent that Plaintiff's claims are against the Individual Defendants in their individual capacities.   Plaintiff requests both compensatory and punitive damages, (ECF No. 1 at 25), which are "unavailable in official capacity suits." *Biggs*, 66 F.3d at 61.   Defendants argue against extending the remedy created by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), to this context in their motion to dismiss, (ECF No. 24-1, at 23), which Plaintiff replies to in later briefing, (ECF No. 28, at 24).   *Bivens* creates a cause of action against a government official in their individual capacity.   *Randall v. United States*, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under *Bivens* is against federal officials individually, not the federal government.")

### C.   Motion to Dismiss Under Rule 12(b)(5)

Defendants argue that the complaint should be dismissed for Defendants Battaglia, Fine, and Ramsburg because Plaintiff failed to serve them properly. Rule 4(e) provides multiple avenues for serving an individual within a judicial district of the United States.   Individuals can be personally served with a copy of the summons and the complaint; alternatively, he or she can be served by leaving a copy of the documents at their home with someone of "suitable age and discretion" who lives there, or by delivering a copy to an agent of the individual. Fed.R.Civ.P. 4(e)(2).   When

11

those avenues of service are unavailable, an individual may be
served by "following state law for serving a summons in an action
brought in courts of general jurisdiction in the state where the
district court is located or where service is made." Fed.R.Civ.P.
4(e)(1).  Under Maryland law, "[w]hen proof is made by affidavit
that good faith efforts to serve the defendant. . .have not
succeeded. . .the court may order any other means of service that
it deems appropriate in the circumstances and reasonably
calculated to give actual notice." Md. Rule 2-121(c).

Fed.R.Civ.P. 12(b)(5) governs motions to dismiss for
insufficient service.  In a motion to dismiss under Rule 12(b)(5),
the plaintiff bears the burden of establishing the validity of
service under Fed.R.Civ.P. 4.  *O'Meara v. Waters*, 464 F.Supp.2d
474, 476 (D.Md. 2006).  "Generally, when service of process gives
the defendant actual notice of the pending action, the courts may
construe Rule 4 liberally to effectuate service and uphold the
jurisdiction of the court." *Id.*

According to his motion for alternative service, Plaintiff
recognized the obligation under Rule 4 to serve at least two of
these defendants at her dwelling, or residence.  Because he had
difficulty obtaining those addresses, he asked the United States
Attorney for assistance, but was rebuffed.  (ECF No. 16, at 1).
Through his signed motion, Plaintiff now appears to be requesting

12

an order under Md. Rule 2-121(c) for an alternative avenue of service.  (ECF No. 16, at 1).

Because the entire complaint will be dismissed, it is not necessary to resolve the disputes over service and both the motion for alternative service and the motion to dismiss for failure to serve will be denied as moot.

### D.    Motion to Dismiss Under Rule 12(b)(1)

Fed.R.Civ.P 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  Questions of subject matter jurisdiction should be decided first, as they strike at the heart of the court's power to hear the case. *NAACP v. U.S. Dep't of Homeland Sec.*, 364 F.Supp.3d 568, 573 (D.Md. 2019).  Plaintiff bears the burden of establishing subject matter jurisdiction. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015). A motion to dismiss under 12(b)(1) may proceed in one of two ways:

> "A defendant may either contend (1) that the complaint fails to allege facts upon which subject matter jurisdiction can be based; or (2) that the jurisdictional facts alleged in the complaint are untrue." [*Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)].  The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, [*Fredericksburg & Potomac R.R. Co. v. United States*,] 945 F.2d [765,] 768 [(4th Cir. 1991)]. When a defendant makes a facial challenge to subject matter jurisdiction, as Defendants do here, "the plaintiff, in effect, is afforded the same procedural protection as he would

13

> receive under a Rule 12(b)(6) consideration."
> *Adams*, 697 F.2d at 1219. "In that situation,
> the facts alleged in the complaint are taken
> as true, and the motion must be denied if the
> complaint alleges sufficient facts to invoke
> subject matter jurisdiction." *Kerns v. United
> States*, 585 F.3d 187, 192 (4th Cir. 2009).

*NAACP*, 364 F.Supp.3d at 573. A dismissal for lack of subject matter jurisdiction must be without prejudice, as the court does not have the power to adjudicate the case on the merits. *Lancaster v. Sec'y of Navy*, 109 F.4th 283, 295 (4th Cir. 2024). In cases where sovereign immunity is at issue, the party suing the United States "'bears the burden of pointing to . . . an unequivocal waiver of immunity.'" *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995).

"It is axiomatic that the United States cannot be sued without its consent[.]" *Lancaster*, 109 F.4th at 292 (quoting *Randall*, 95 F.3d at 345). Sovereign immunity is "'jurisdictional in nature' and deprives courts of the power to hear suits against the United States absent Congress's express consent." *United States v. Miller*, 604 U.S. --, 145 S. Ct. 839, 849 (2025) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). The burden is on the plaintiff to identify an explicit waiver of sovereign immunity. *Williams*, 50 F.3d at 304.

Plaintiff has not identified any waivers of sovereign immunity that may apply to his claims against the Agency

14

Defendants.   Plaintiff advances seven counts in his prayer for relief: five constitutional violation claims (Counts I-IV, VI) and two tort claims (Counts V, VII).   The sole remedy for torts committed by the federal government, "and its employees who commit tortious acts in the course of their employment," is the Federal Tort Claims Act (FTCA). *Ross v. Fed. Bureau of Alcohol, Tobacco, and Firearms*, 807 F.Supp.2d 362, 369 (D.Md. 2011).   The United States "has not waived sovereign immunity for constitutional violations," which means the court lacks jurisdiction over those claims as asserted against the Agency Defendants. *Saunders v. United States*, 502 F.Supp.2d 493, 497 (E.D. Va. 2007); *see also Ross*, 807 F.Supp.2d at 370.   The avenue for holding federal government officials liable for constitutional violations in their personal capacity is a *Bivens* action. *See Bivens*, 403 U.S. at 397.

"Construing the Complaint liberally to be against the United States," the tort claims are still barred by sovereign immunity. *Ross,* 807 F.Supp.2d at 370.   Plaintiff stumbles on a threshold issue.   As Defendants note, (ECF No. 24-1, at 20), no claim can be brought under the FTCA unless it has first been presented to the agency in writing.   28 U.S.C. § 2675(a); *see Est. of Van Emburgh ex rel. Van Emburgh v. United States*, 95 F.4th 795, 800-01 (4th Cir. 2024).   Defendants posit that Plaintiff has not done so, (ECF No. 24-1, at 20-21), which Plaintiff does not deny.   Additionally,

15

the time for Plaintiff to meet this requirement has passed; as relevant here under 28 U.S.C. § 2401(b), any "tort claim against the United States is barred unless it is presented in writing to the appropriate federal agency within two years after it accrues." (ECF No. 24-1, at 21).  The tort claims must be dismissed against the Agency Defendants and Individual Defendants for lack of subject matter jurisdiction.

Plaintiff also requested a declaratory judgment "finding that [Defendants] violated Plaintiff's rights as alleged in Counts I-VII." (ECF No. 1, at 25).  Declaratory judgments against the government also require a waiver of sovereign immunity, *Goldstein v. Moatz*, 364 F.3d 205, 219 (4ᵗʰ Cir. 2004), and there has been none alleged here.[5]  Plaintiff does not identify any source of law underpinning his request for a declaratory judgment. Accordingly, the court also dismisses Plaintiff's request for a declaratory judgment for lack of subject matter jurisdiction.

### E.    Motion to Dismiss Under Rule 12(b)(6)

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) "constitutes an assertion by a defendant that, even if the facts alleged by the

---

[5] While the Defendants did not specifically argue that there is no waiver of sovereign immunity for declaratory judgments in their motion to dismiss, the court has an obligation to assure itself of its jurisdiction in all cases. "Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." *Iqbal*, 556 U.S. at 671.

plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'" *Bourgeois v. Live Nation Ent., Inc.*, 3 F.Supp.3d 423, 434 (D.Md. 2014), *as corrected* (Mar. 20, 2014). Under the pleading requirements of Fed.R.Civ.P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

> In order to satisfy Rule 8(a)(2), a plaintiff need not include "detailed factual allegations." [*Bell Atlantic Corp. v.* ] *Twombly*, 550 U.S. [544,] 555 [(2007)]. But, the rule demands more than bald accusations or mere speculation. *Id.; see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S.[, at 556]. In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955; *see* [*Ashcroft v.* ]*Iqbal*, 556 U.S. [662,] []684 [(2009)] []; *Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir.2011).

*Id.*

Plaintiff's attempt to pursue claims against the Individual Defendants in their personal capacity are also unavailing. Plaintiff fails to plead any facts giving rise to liability for Defendants former Attorney General Garland or former U.S.

17

Attorneys Barron or Battaglia.  While Plaintiff provides more facts for the remaining Individual Defendants, it is not proper to extend *Bivens* into this context.

### 1.   Failure to Plead Facts

Plaintiff's claims against Defendants Garland, Barron, and Battaglia in their personal capacity will be dismissed because the complaint does not "contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570.). Additionally, the United States Supreme Court has been clear that *Bivens* actions cannot be brought against government officials for the actions of their subordinates:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

*Id.* at 676.

Defendants correctly argue that Plaintiff does not allege sufficient facts to state a claim against Defendants Garland, Barron, or Battaglia. (ECF No. 24-1, at 33).  The complaint alleges a single fact about former Attorney General Garland: that he did not respond to the letters the Plaintiff sent about this

18

case.  (ECF No. 1 ¶ 46).  The complaint only alleges two facts about former U.S. Attorney Barron: he did not reply to Plaintiff's letters, and he did not respond when Plaintiff requested a personal meeting.  (*Id*.).  Finally, the complaint alleges that former U.S. Attorney Battaglia signed a letter written by Defendant former Assistant U.S. Attorney Fine as part of the parole proceedings, (*Id*. at ¶ 35), and did not reply to a later letter from Plaintiff, (*Id*. at ¶ 46).  As the Supreme Court clarified in *Iqbal*, Plaintiff cannot assert supervisory liability against Defendants.  Plainly, the complaint does not provide facts sufficient to state any claim against these three defendants.  The motion to dismiss will be granted with regard to Defendants Garland, Barron, and Battaglia in their personal capacities.

### 2. *Bivens* **Claims Are Unavailable Here**

Plaintiff's *Bivens* claim against Defendants Fine and Ramsburg also fails.  A *Bivens* claim allows an individual to bring an action for money damages against federal government officials who violated the plaintiff's constitutional rights while acting under "color of law."  *Bulger v. Hurwitz*, 62 F.4th 127, 135 (4th Cir. 2023) (citing *Bivens*, 403 U.S. at 391 n.4, 396).  "*Bivens* did not abolish the doctrine of sovereign immunity of the United States. Any remedy under *Bivens* is against federal officials individually, not the federal government."  *Randall*, 95 F.3d at 345.  In

19

consideration of Congress's role in creating causes of action, the United States Supreme Court has chosen "to severely limit the reach of *Bivens* by imposing a highly restrictive two-step analysis for *Bivens* cases." *Bulger*, 62 F.4th at 136-37.

> First, a court must determine whether a claim falls within the causes of action authorized under the Supreme Court's three *Bivens* cases -- *Bivens*, *Davis*[ *v. Passman*, 442 U.S. 228 (1979)], and *Carlson*[*v. Green*, 446 U.S. 14 (1980)] -- or whether it "arises in a 'new context' or involves a 'new category of defendants.'" *Hernandez[ v. Mesa,* 589 U.S. 93, 102 (2020)] [] (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68[] (2001)). A context is "new" when it is "different in a meaningful way from previous *Bivens* cases decided by [the] Court." *Ziglar*[ *v. Abbasi*, 582 U.S. 120, 139 (2017)][].
>
> If a court finds that a claim presents a "new context" different from the three *Bivens* cases, it must "proceed to the second step and ask whether there are any special factors that counsel hesitation about granting the extension" of *Bivens*. *Hernandez*, 140 S. Ct. at 743 (internal quotation marks and alterations omitted). This "special factors" inquiry must focus on "separation-of-powers principles" and requires courts to ask whether judicial intrusion into a given field is appropriate. *Id*. (quoting *Ziglar*, [582 U.S. at 135]).

*Id*. at 137. In recent years, the Supreme Court has strictly limited what it would consider a new context or category of defendants. *See Egbert v. Boule*, 596 U.S. 482, 491 (2022) (recognizing that extending *Bivens* is "a disfavored judicial activity," and stating "if there are sound reasons to think

Congress might doubt the efficacy or necessity of a damages remedy[,] the courts must refrain from creating [it]." (quoting *Ziglar*, 582 U.S. at 135-137)).

Defendants correctly argue that *Bivens* is unavailable here. Plaintiff's allegations against the remaining Individual Defendants – Defendants Fine and Ramsburg – all relate to their work within their roles. Plaintiff alleges that both Defendants sought to enforce a judgment against Plaintiff[6] as part of their jobs and used the legal process to enforce that judgment when Plaintiff refused to pay.

This case is analogous to the situation in *Bulger*. There, the estate of former federal inmate James "Whitey" Bulger filed suit against individuals from the Bureau of Prisons, saying that they failed to protect the inmate when they transferred him to a facility that was known for violence. *Bulger*, 62 F.4th at 133. The Fourth Circuit determined that extending *Bivens* into that sphere was inappropriate. *Id.* at 142. Not only was it a new

_____

[6] Plaintiff repeatedly asserts that the judgment owed to Mrs. DeLong is "corrupt." (*See*, *e.g.*, ECF No. 1 ¶¶ 40, 42, 48). This is a legal conclusion, so the court is not obligated to assume the truth as part of the Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 681 ("[T]he allegations are conclusory and not entitled to be assumed true."). As Defendants point out in their motion to dismiss, the judgment has been approved by the Indiana Supreme Court. (ECF No. 24-1, at 3 (citing *Kimberlin v. DeLong*, 637 N.E.2d 121, 128 (Ind. 1994))). See also, *Kimberlin v. DeLong*, No. 24A-MI-1870, 2025 WL 2603049 (Ind.Ct.App., Sept. 9, 2025)(affirming denial of Rule 60 motion for relief from judgment.)

context, but special factors counseled against extending the remedy in that context. *Id.* The Fourth Circuit also discussed *Farmer v. Brennan*, 511 U.S. 825 (1994). "In *Farmer*, an inmate brought a *Bivens* suit pursuant to the Eighth Amendment against prison officials for allegedly failing to protect the inmate from a violent beating and rape, even though the officials knew that the prison had a 'violent environment' and the inmate was 'particularly vulnerable to sexual attack.'" *Bulger*, 62 F.4th at 138. While the appellant in *Farmer* was pursuing a *Bivens* action, the Supreme Court made no ruling on the *Bivens* aspect and has never listed *Farmer* as one of its *Bivens* cases. *Id.* at 138-39.

Like the plaintiff in *Bulger*, Plaintiff is seeking to hold government officials responsible for doing their jobs: making administrative decisions about parole eligibility, special conditions, and re-incarceration. The court notes that Plaintiff is not asserting that any of the Defendants assaulted him; rather, he argues that the Defendants' administrative actions resulted in him being assaulted. Like the plaintiff in *Bulger*, he is seeking to hold government officials accountable for what happened to him after he returned to prison. This situation does not resemble any of the three instances where the Supreme Court has approved a *Bivens* claim, and thus must be dismissed.

**F.  Motion to Seal**

"It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings." *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014).  The *Public Citizen* court further explained that:

> When presented with a motion to seal, the law in this Circuit requires a judicial officer to comply with the following procedural requirements:  (1) provide public notice of the sealing request and a reasonable opportunity for the public to voice objections to the motion; (2) consider less drastic alternatives to closure; and (3) if it determines that full access is not necessary, it must state its reasons—with specific findings—supporting closure and its rejections of less drastic alternatives.

*Id.* at 272 (citing *In re Knight Pub. Co.*, 743 F.2d 231, 234–35 (4th Cir. 1984)); *see also Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 302 (4th Cir. 2000).  Local Rule 105.11 requires the party seeking sealing to provide "(a) proposed reasons supported by specific factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."

Plaintiff filed a motion to seal, (ECF No. 31), seeking to seal his *in camera* filing in support of his reply to Defendants' motion to dismiss, (ECF No. 29).  Defendants did not oppose the motion to seal.  In his motion, Plaintiff alleges that the *in camera* filing contains "private, sensitive, personal, and prurient

information that is not in the public interest regarding matters involving Plaintiff when he was a minor." (ECF No. 31, at 1). This court agrees that the Plaintiff's privacy interest outweighs any potential public interest. The information in this filing is provided as background information about the Plaintiff's past, (ECF No. 28, at 12), and does not contain any allegations against any defendants. Plaintiff's actual reply to the motion to dismiss remains public, and he only seeks to seal the *in camera* portion. The motion to seal will be granted.

### G. Motions for Hearing, Show Cause

The court has determined that no hearing is necessary, as the papers provide all information needed to decide the claim.[7] The motion for hearing, (ECF No. 37), will be denied. Because the matter is being dismissed, the motions to show cause, (ECF Nos. 15, 19), will be denied as moot.

## III. Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted. All claims against the Agency Defendants and the tort claims against the Individual Defendants will be dismissed without

---

[7] Finally, the court notes Defendants' argument that the statute of limitations has long run out on Plaintiff's claims, (ECF No. 24-1, at 23-24), and Plaintiff has attempted to litigate the parole revocation multiple times over the last two decades. (*Id.* at 10). It is not necessary to resolve any of the additional arguments presented by Defendants.

prejudice, and the constitutional claims against the Individual Defendants will be dismissed with prejudice. Additionally, Plaintiff's motions to show cause will be denied as moot, Plaintiff's motion to seal will be granted, Defendants' motion to strike will be granted, and Plaintiff's motion for hearing will be denied. The motions concerning service of process will be denied as moot. A separate order will follow.

                                                        _____/s/_____
                                                  DEBORAH K. CHASANOW
                                                  United States District Judge